# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

DANIEL WESLEY ATKINS,      )
         **Plaintiff,**      )
         )
v.          )      No. 3:09-CV-520
         )      (Phillips)
DENSO MANUFACTURING      )
TENNESSEE, INC.,      )
         **Defendant.**      )

## MEMORANDUM OPINION

### I.    Introduction

This matter comes before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 25.] Having read the parties' accompanying memoranda and thoroughly reviewed the record in this case, and for the reasons stated herein, this Court finds that there are no genuine issues of material fact, and that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is **GRANTED** and this case is **DISMISSED**.

### II.    Statement of the Facts

Plaintiff Daniel Wesley Atkins is a Caucasian male who was an employee of Defendant Denso Manufacturing Tennessee, Inc. from November 9, 1998, to December 8, 2008. [Doc. 1, ¶¶ 5, 10.] Defendant has a number of policies relating to the fair treatment of its employees and prohibiting unlawful discrimination, harassment, or retaliation. [Doc. 30, ¶ 2.]

Upon being hired, Plaintiff received an employee handbook informing him of these policies, attended a one-week orientation, and underwent diversity training. *Id.* ¶¶ 5, 7.

Plaintiff held various positions during his ten years with Defendant, but for all times material to this case, Plaintiff worked as a production associate in Plant 202, Electronic Products Division. [Doc. 1, ¶ 9.] Plaintiff alleges, and Defendant admits in his Answer, that for all times material to this lawsuit, Plaintiff's attendance, job knowledge, and quality of work were satisfactory. *Id.* ¶ 11; [Doc. 2, ¶ 11.] Several of Defendant's performance reviews of Plaintiff commend his workmanship and preparation for the job. [Doc. 30, ¶¶ 8, 10-11.] However, throughout Plaintiff's employment with Defendant, various individuals in Plaintiff's chain of command expressed concerns that Plaintiff had difficulty getting along with his coworkers. *Id.* ¶¶ 8-11; [Doc. 26, at 3-4.] In 2005, Plaintiff received an oral warning regarding his attitude toward coworkers. [Doc. 30, ¶ 13.]

Plaintiff injured his leg in May of 2008 and was on FMLA leave until August 11, 2008. *Id.* ¶ 21. During Plaintiff's absence from work, Kevin Adkins, an African-American male who worked in the same plant as Plaintiff, made several derogatory statements about Plaintiff to Plaintiff's co-workers. *Id.* ¶¶ 22-24. Mr. Adkins had been hired by Defendant in 2006, and Plaintiff alleges that Mr. Adkins frequently blamed problems at work on racism, complained that Defendant didn't hire enough black people, made several threats to call the NAACP, and referred to his white co-workers as "racists" and "rednecks." [Doc. 33, ¶¶ 63-74, 77-81.] When Plaintiff returned to work in the fall of 2008, relations deteriorated between Plaintiff and Mr. Adkins, wherein Mr. Adkins called Plaintiff a "racist redneck," and Plaintiff told Mr. Adkins he was "proud you're not on welfare" and called Mr. Adkins a "Toby," a well-known racial epithet.

[Doc. 1, ¶ 12]; [Doc. 30, ¶¶ 26, 28]; [Doc. 33, ¶¶ 100, 127.] Defendant's Associate Relations

office met with Mr. Adkins and subsequently interviewed Plaintiff regarding these incidents.

[Doc. 26, at 5-6.] At the same time, Associate Relations was also investigating a complaint by

another employee, Retha Ramsey, that Plaintiff had yelled at her during work. *Id.* at 6; [Doc. 33,

¶ 115.] As a result of the latter investigation, Plaintiff received a "Memo to File," which stated:

> While we believe there was some inappropriate conduct on your part, we could not
> conclusively prove this misconduct. You have been counseled by your chain of
> command and Associate Relations on the type of behavior that is expected within the
> workplace . . . .
>
> [W]e would like to take this opportunity to remind you that it is the expectation that
> all [employees] demonstrate good teamwork, behave in a positive manner, and
> maintain professionalism at all times while at work. Additionally, [Defendant]
> strictly prohibits retaliation in any way toward team members or members of your
> leadership chain as a result of this investigation. . . .
>
> Please understand that this memo to your file will not act as formal disciplinary
> action, but this memo will serve as formal notice that you have been made aware of
> the expectations for professional conduct. Any future incidents of inappropriate
> conduct will be fully investigated and may result in disciplinary action, up to and
> including recommendation for termination.

[Doc. 30, ¶ 33.] Mr. Adkins received no punishment at that time. After receiving the Memo,

Plaintiff asked his team leader to tell Mr. Adkins not to speak to Plaintiff unless it was work

related. *Id.* ¶ 37. Mr. Adkins subsequently spoke to Plaintiff on at least one occasion, when Mr.

Adkins said, "Hey man, how you doing?" as he passed Plaintiff in the hallway. *Id.* ¶ 39. On

October 20, 2008, Plaintiff reported to Associate Relations that Mr. Adkins had made this and

other statements, *id.* ¶ 43, and also that Plaintiff felt his name was being smeared as a racist, *id.* ¶

44. While Defendant asserts that it subsequently investigated Plaintiff's claims, *id.* ¶ 45-47,

Plaintiff alleges that Defendant did not conduct an investigation, *id.* ¶ 48. Defendant admits that

3

Associate Relations told Plaintiff "it can get serious because Mr. Adkins has organizations out there which can threaten [Defendant] with lawyers." [Doc. 33, ¶ 158.]

On or about November 10, 2008, Mr. Adkins found in the employee break room a picture of President Obama with the word "baboon" written on it. [Doc. 30, ¶ 50.] Mr. Adkins became upset, and alleges that he saw Plaintiff, who present at the time, smirk at him. [Doc 26, at 8.] Later that afternoon when Mr. Adkins saw Plaintiff again, Mr. Adkins said, "I'm going to rip [Plaintiff's] head off." [Doc. 30, ¶ 55.] Because Plaintiff was present at the time, one co-worker took Mr. Adkins's threat seriously and stood in front of Mr. Adkins. [Doc. 33, ¶ 133.] Mr. Adkins subsequently tried several times to "go after" Plaintiff, but people held and pushed Mr. Adkins back. *Id.* ¶ 187. Mr. Adkins told a coworker he was going to "break [Plaintiff's] fucking jaw," and continued trying to confront Plaintiff about the baboon picture. *Id.* ¶¶ 194, 197.

Consequently, on November 12, 2008, Plaintiff filed an informal complaint with Associate Relations, stating that Mr. Adkins had made threatening statements toward him. [Doc. 1, ¶ 13.] While Defendant alleges that it investigated the matter by talking to a number of its employees, [Doc. 30, ¶ 61], Plaintiff alleges that Defendant's management personnel did not investigate the incident, [Doc. 1, ¶ 14]. During its inquiry into the exchange between Mr. Adkins and Plaintiff, Defendant learned that Plaintiff had stated that he would "see" Mr. Adkins at Wal-Mart and that they would "settle" things there, which Defendant perceived this as a threat to do physical harm to Mr. Adkins. [Doc. 30, ¶ 64, 65]; [Doc. 33, ¶ 108.] On November 24, 2008, Plaintiff was suspended pending review by a Termination Review Board ("TRB"), which was composed entirely of white employees. [Doc. 1, ¶ 15]; [Doc. 2, ¶ 15.] Mr. Adkins, who had no

4

history of prior discipline, was punished for his threats following the "baboon" incident with a "final written warning," a suspension of 50% of his bonus, and a one-year restriction on his ability to transfer departments or move positions. [Doc. 30, ¶ 62.]

The TRB, which consisted entirely of white employees, reviewed Plaintiff's entire employment history, interviewed Plaintiff's chain of command, and heard testimony from Plaintiff. [Doc. 26, at 10.] The TRB unanimously concluded to terminate Plaintiff. [Doc. 1, ¶ 16]; [Doc. 26, at 10-11.] On December 10, 2008, Plaintiff applied for unemployment benefits, and Defendant indicated that it did not wish to offer any information regarding Plaintiff's employment. [Doc. 1, ¶ 17.] Plaintiff's benefits were approved. *Id.* On December 15, 2008, Plaintiff received a letter from Defendant stating that he had been terminated due to "Violation of Company Policy Related to Gross Misconduct." *Id.* ¶ 18.

Plaintiff alleges that as a result of his termination he sustained lost wages and benefits of employment, and suffered embarrassment, emotional pain, inconvenience, suffering, mental anguish, loss of enjoyment of life, and loss of economic opportunity. *Id.* ¶ 25.

IV.     **Statement of the Case**

Plaintiff filed the instant case on November 30, 2009. [Doc. 1.] His complaint raised four causes of action, namely violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, based on reverse race discrimination, color discrimination, retaliation, hostile work environment, and race-based adverse employment action taken to avoid disparate-impact liability, [Doc. 1, ¶¶ 20-25]; (2) the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*, based on reverse race discrimination; color discrimination; and retaliation, [Doc.

5

1, ¶¶ 27-32]; (3) the Fourteenth Amendment, *id.* ¶ 34; and (4) the Defendant's own internal policies, *id.* ¶ 37. Plaintiff has taken a voluntary non-suit of the Fourteenth Amendment and "internal policies" counts. [Doc. 9.] Plaintiff's prayer for relief seeks actual and compensatory damages in the amount of one million dollars ($1,000,000) and punitive damages in the amount of five million dollars ($5,000,000). [Doc. 1, Prayer ¶¶ 2, 5.]

The parties have engaged in discovery, and trial is set for December 6, 2011. On August 8, 2011 Defendant filed this Motion for Summary Judgment [Doc. 25] and an accompanying memorandum [Doc. 26], statement of material facts [Doc. 27], and affidavit [Doc. 28]. Plaintiff filed responses [Docs. 29, 30] in opposition to Defendant's motion, and an accompanying statement of material facts [Doc. 31] on August 29, 2011. Plaintiff replied to Plaintiff's responses and statement of facts [Docs. 32, 33]. This motion is ripe for judgment.

## V.     Statement of Jurisdiction

This court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981(a). This Court also has supplemental jurisdiction over the Tennessee state law claims pursuant to 28 U.S.C. § 1367(a).

Defendant is a duly licensed corporation with its principal office in Maryville, Blount County, Tennessee. Atkins is a citizen and resident of Maryville, Blount County, Tennessee, and was Defendant's employee until December of 2008. Additionally, all events giving rise to this lawsuit took place in Blount County, Tennessee, which is located in the Eastern District of Tennessee. Venue is proper pursuant to 28 U.S.C. § 1391(b).

Finally, all administrative conditions precedent to the initiation of this action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, have been met. On or about November 9, 2009, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue. Plaintiff filed suit within ninety (90) days.

## VI.    Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In deciding a motion for summary judgment, a district court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962). In order to prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the non-movant's case," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). However, a mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Ultimately, the district court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Goller v. Ohio Dep't of Rehab. & Corr.*, 285 Fed. App'x 250, 255 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 256).

## VII.    Analysis

### A.    Reverse Race Discrimination

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e, *et seq.* (2010). In order to survive summary judgment in a case arising under Title VII, a plaintiff must present direct evidence of discrimination, or use circumstantial evidence to satisfy the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Goller*, 285 Fed. App'x at 254-55 (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Plaintiff's claims ask the factfinder to infer racial discrimination from Mr. Adkins's actions toward him, Defendant's response thereto, and Defendant's fear of a lawsuit with Mr. Adkins. Plaintiff produced no direct evidence that Defendant terminated Plaintiff because he was Caucasian, so Plaintiff's claims are analyzed under the *McDonnell Douglas* burden-shifting test.

Under the *McDonnell Douglas* test for circumstantial evidence, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) he was treated less favorably than a similarly situated employee outside the protected class. 411 U.S. at 802; *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008). A reverse race discrimination plaintiff can satisfy the "protected

class" element by showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority, . . . ." *Goller*, 285 Fed. App'x at 255 (citing *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.2d 249, 255 (6th Cir. 2002). If the plaintiff succeeds in setting forth a prima facie case, the burden of proof shifts to the defendant to offer a legitimate, non-discriminatory reason for its adverse employment action. *McDonnell Douglas*, 411 U.S. at 804. If the defendant succeeds, the burden shifts back to the plaintiff to show that defendant's proffered reason is a pretext for discrimination. *Id.* at 804.

A plaintiff's burden under *McDonnell Douglas* is not onerous. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). It is merely to present evidence upon which "a reasonable jury could conclude that the plaintiff suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination. *Macy*, 484 F.3d at 364. However, this court finds that Plaintiff failed to set forth a prima facie case of racial discrimination and cannot rebut Defendant's proffered non-discriminatory reason for its adverse employment action.

### 1.     Plaintiff's Prima Facie Case

The parties agree that there is no dispute that Plaintiff was qualified for his position and was subject to an adverse employment action. For that reason, the court proceeds to the "background circumstances" and "similarly situated" elements of the prima facie case.

### a.     Protected Group, i.e. "Background Circumstances" Test

Plaintiffs show "background circumstances" of discrimination against the majority by producing evidence that defendant's unlawful consideration of race in the past

9

"justifies the suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti*, 314 F.3d at 256; *Campbell v. Hamilton Cnty.*, 23 Fed. App'x 318, 324 (6th Cir. 2001). Such "circumstances" can be established by proof of internal or external pressure to favor minorities; pressure to increase minority percentages; the hiring or promoting employee's membership in the same minority race as the employees he or she was purportedly favoring; and the hiring or promotion of less qualified minority employees. *Ellison v. Cnty. of Summit*, 2011 U.S. Dist. LEXIS 11079, *5-6 (N.D. Ohio Feb. 4, 2011); *Johnson v. Metro Gov't of Nashville & Davidson Cnty.*, 2010 U.S. Dist. LEXIS 87866, *43-44 (M.D. Tenn. Aug. 24, 2010); *Nelson v. City of Flint*, 136 F. Supp. 2d 703, 714 (E.D. Mich. 2001). Courts also consider the racial composition of the relevant workforce, management, and decisionmakers. *Toth v. City of Toledo*, 2010 U.S. Dist. LEXIS 137855, *7-8 (N.D. Ohio Nov. 9, 2010).

As proof that Defendant favors minorities in hiring, promotion, and retention decisions, Plaintiff points to Mr. Adkins's poor reviews during his 90-day evaluation period at the beginning of his employment, and "unacceptable" marks in subsequent evaluations. [Doc. 29, at 4-5.] He claims that because Mr. Adkins was hired over the recommendation of his supervisor, "[t]here is an inference that African Americans are given more leniency." *Id.* at 5. Plaintiff asserts that, in 2008, most of Defendant's hires and promotions were given to African Americans. *Id.* at 6. Plaintiff also offers as proof Defendant's employment application, which inquires about the race of the applicant; the statement of one of Defendant's employees that Defendant "prides itself on diversity"; and Defendant's $250 contribution to the National Society of Black Engineers. *Id.* at 6-7. Finally, Plaintiff contends that the dearth of African Americans employed by Defendant indicates a pressure to hire African Americans. *Id.* at 6.

10

Plaintiff failed to establish that Defendant is "that unusual employer who discriminates against the majority." *Goller*, 285 Fed. App'x at 255. His evidence regarding Mr. Adkins's evaluations and employment history does not show a history or pattern of reverse discrimination at the company, and is better suited in the "similarly situated" analysis. Plaintiff also proffered no concrete evidence that minority employees were more favorably treated in regard to hiring, promotion, and job retention. *See Richardson v. Rock City Mech. Co.*, 2010 U.S. Dist. LEXIS 65103, *22 (M.D. Tenn. June 28, 2010). Without more, his assertion about Defendant's preference for African Americans in its hiring and promotion practices is unfounded. *Compare* [Doc. 29, at 6], *with Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 615 (6th Cir. 2003) (finding the "background circumstances" element satisfied when plaintiff "present[ed] significant evidence" in the form of "considerable statistical data" showing that "illegal racial and gender preference have been rampant for years").

The remainder of Plaintiff's evidence—namely the "race" inquiry on the employment application, Defendant's pride in "diversity," and the donation to a race-based labor group—does not establish that Defendant discriminates against the majority. *Goller*, 285 Fed. App'x at 255; *Johnson*, 2010 U.S. Dist. LEXIS 87866, *44 (finding that defendants' discussions of efforts to increase diversity "show, at most, that the [defendants] were aware of the legal obligation to provide equal opportunity to all [employees]"). Finally, the overwhelmingly white racial composition of Defendant's workforce and management strongly weigh against a finding of "background circumstances." *See Hout v. City of Mansfield*, 550 F. Supp. 2d 701, 722-23 (N.D. Ohio); *Johnson*, 2010 U.S. Dist. LEXIS 87866, *43-44. Plaintiff fails to satisfy the "background circumstances" element of a prima facie case of reverse race discrimination.

11

### b. Similarly Situated Requirement

Plaintiff also cannot prove that a similarly situated employee outside of Plaintiff's class was treated more favorably than Plaintiff. In order for employees to be "similarly situated" for the purposes of making out a prima facie cause under Title VII, a plaintiff must prove that "all of the relevant aspects of his employment situation are 'nearly identical' to those of the . . . employees who he alleges were treated more favorably. The similarity must exist in all relevant aspects of their respective employment circumstances." *Pierce v. Commonwealth*, 40 F.3d 796, 802 (6th Cir. 1994). Thus, proof that the employees were identically situated is not required; the plaintiff and the employee must be similar in all "relevant" aspects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The individual with whom a plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Differences in disciplinary history can establish that two employees are not similarly situated. *Campbell*, 23 Fed. App'x at 325; *see also Boges v. GM Co.*, 2011 U.S. Dist. LEXIS 45543, *16 (M.D. Tenn. Apr. 27, 2011); *Rutherford v. Britthaven, Inc.*, 2010 U.S. Dist. LEXIS 54240, *28 (E.D. Ky. June 2, 2010).

Plaintiff contends that he and Mr. Adkins are similarly situated in all relevant aspects. Both men went through the same orientation, worked the night shift, had the same chain of command, were classified as "production associates," worked on the same production line, and were subject to the same company rules and standards. [Doc. 28, at 8.] Regarding the men's disciplinary history, Plaintiff contends that because Plaintiff's "Memo on File" was not a formal

12

disciplinary action, *id.* at 9, and because the Memo concerned a "disputed" incident, *id.*, the presence of the Memo does not mean that the two had different histories of discipline and inappropriate conduct. Finally, Plaintiff correctly alleges that he and Mr. Adkins are similarly situated with respect to their conduct during the "baboon" picture incident and its aftermath because both men purportedly exchanged threats. Therefore, Plaintiff contends, two similarly-situated men were treated differently when Mr. Adkins received only a "final written warning" for his threats related to the "baboon" picture, whereas Plaintiff was terminated for his threat.

Plaintiff fails to appreciate that the critical difference between Plaintiff and Mr. Adkins is that Plaintiff had a disciplinary history prior to November 2008. Plaintiff received a verbal warning in 2005 and a written Memo to File in 2008 warning him that "[a]ny future incidents of inappropriate conduct will be fully investigated and may result in disciplinary action, up to and including recommendation for termination." [Doc. 30, ¶ 13, 33.] Conversely, Mr. Adkins had never received any such warning. This discrepancy in disciplinary history "was taken into account in the decision-making process for how to treat their behaviors." [Doc. 27, Attach. 3, at 16.] Plaintiff's contentions regarding the merits of the claims that led to his Memo to File, and the fact that the Memo to File is not a "final written warning," do not discount the fact that, when the two men were punished for their respective threats, Plaintiff had an aggravating circumstance affecting his degree of punishment. *See Mitchell*, 964 F.2d at 583. This discrepancy in disciplinary history is sufficient to establish that the two men were not similarly situated as a matter of law. *See Campbell*, 23 Fed. App'x at 325; *Boges*, 2011 U.S. Dist. LEXIS 45543, *16; *Rutherford*, 2010 U.S. Dist. LEXIS 54240, *28.

## 2. Defendant's Legitimate Non-Discriminatory Reason

13

Even if Plaintiff had established a prima facie case of discrimination, this court finds that Defendant produced a legitimate non-discriminatory reason for its adverse employment action against Plaintiff. Terminating an employee for threats of violence is a legitimate, non-discriminatory reason for termination. *Green v. Burton Rubber Processing, Inc.*, 30 Fed. App'x 466, 471 (6th Cir. 2002). Defendant claims Plaintiff was terminated because he engaged in acts of misconduct, was disruptive to his team, and threatened Mr. Adkins, which was a violation of company policy related to gross misconduct. [Doc. 26, at 15.] Plaintiff challenges the legitimacy of this termination decision by alleging that all Plaintiff did was "smile" to Mr. Adkins, but Plaintiff ignores the "Wal-Mart" threat that was the principal cause of his termination. Therefore, the onus shifts back to Plaintiff to show that Defendant's proffered reason is a pretext for discrimination. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008).

### 3. Plaintiff's Proof of Pretext

A plaintiff can show a "pretext for discrimination" in three ways: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the employer's action; or (3) that the proffered reasons were insufficient to motivate the employer's action. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 460 (6th Cir. 2004)). To carry its burden for purposes of summary judgment, the plaintiff must produce "sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it fired h[im]." *Id.* (citing *Mickey*, 516 F.3d at 526). If a plaintiff "'only create[s] a weak issue of fact as to whether the defendant's reason was untrue,' and there is ample evidence to support the employer's position," summary judgment will be

14

appropriate. *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 504 (6th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Plaintiff claims that Defendant's adverse employment action was motivated by the fact that, because Mr. Adkins was the only African-American working the night shift, Defendant did not want to fire Mr. Adkins. [Doc. 29, at 17.] Plaintiff compares Mr. Adkins's and Plaintiff's work histories and performance evaluations, and points to Defendant's failure to follow up on or investigate Plaintiff's complaints regarding Mr. Adkins. Plaintiff also notes that Mr. Adkins interpreted any adverse action against him as race-based, and that Plaintiff was told by Defendant's Associate Relations department that Plaintiff's complaints against Mr. Adkins could "get serious because [Mr. Adkins] has organizations out there which can threaten [Defendant] with lawyers." [Doc. 33, ¶ 158.] Regarding the legitimacy of Defendant's proffered reason for terminating the Plaintiff, Plaintiff asserts there was "no inherent threat" in Plaintiff's statement about "settling things" with Mr. Adkins at Wal-Mart. [Doc. 29, at 21.] Finally, Plaintiff contends that Defendant did not follow its own disciplinary policy and that the TRB terminated him based on a packet that put Plaintiff in a "negative, non neutral light." *Id.* at 22.

Almost all of Plaintiff's "pretext" argument relates to Defendant's failure to punish Mr. Adkins and the discrepancy between Defendant's treatment of Plaintiff and Mr. Adkins. Plaintiff has not presented an iota of evidence that he was not terminated because of his threat to Mr. Adkins. There is basis in fact for the threat, as Plaintiff admits remarking that he would "settle things" with Mr. Adkins at Wal-Mart.[1] [Doc. 30, ¶ 62]; [Doc. 33, ¶ 108.] It is

---

[1] This court must view as true for purposes of this motion Plaintiff's claim that his Wal-Mart statement was not a threat, but merely an expression of his desire to peacefully resolve the conflict with Mr. Adkins outside of work. However, Defendant need only establish that it

reasonable for the TRB to find such a statement sufficient grounds for termination, particularly in light of Plaintiff's disciplinary history and prior warning that "[a]ny future incidents of inappropriate conduct will be fully investigated and may result in disciplinary action, up to and including recommendation for termination." [Doc. 30, ¶ 33.]

Finally, regarding Plaintiff's attempt to prove that Defendant was not "actually motivate[d]" by its proffered reason, *Chen*, 580 F.3d at 400, Plaintiff presents no evidence that Defendant was motivated by anything other than a desire to punish Plaintiff for his threat to Mr. Adkins. When considering actual motivation, the Sixth Circuit imposes an heightened standard on employers: "[F]or an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 708 (6th Cir. 2006) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998)). However, Defendant met and exceeded this standard, as it disclosed the employment history packet that all of the members of the TRB had before them at the time of Plaintiff's termination, and described to the court the extensive interview process that occurred prior to the board's decision. [Doc. 27, Attachs. 9, 10]; [Doc. 28, Attach. 2.] This court finds that the board reasonably relied on these particularized facts at the time of its decision, and that Plaintiff has presented no evidence that the board was actually motivated by any other factor.

_____

reasonably believed that the statement was a threat. *See Haughton v. Orchid Automation*, 206 Fed. App'x 524, 532 (6th Cir. 2006) ("The employer can establish honest belief by showing its reasonable reliance on the particularized facts that were before it at the time the decision was made. The decisional process used by the employer need not be optimal nor must it leave no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."). This court finds that Defendant came to the informed and reasonable conclusion that this statement was a threat.

Because Plaintiff failed to satisfy the "background circumstances" and "similarly situated elements" of the prima facie case of race discrimination, and alternatively, because Plaintiff cannot prove that Defendant's proffered legitimate, non-discriminatory reason for its adverse employment action is a pretext for discrimination, Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

### B.     Color Discrimination

For purposes of a claim under Title VII, the terms "race" and "color" are not synonymous. *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 133 n.5 (4th Cir. 2002); *Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 950 (W.D. Tenn. 2010). The EEOC Compliance Manual explains the difference:

> The courts and the Commission read "color" to have its commonly understood meaning—pigmentation, complexion, or skin shade or tone. Thus, color discrimination occurs when a person is discriminated against based on the lightness, darkness, or other color characteristic of the person. Even though race and color clearly overlap, they are not synonymous.

Section 15-II, III, at 950-51 (Apr. 19, 2006). Merely alleging racial discrimination is insufficient to raise a claim of color discrimination. *Batey v. Vanderbilt Hosp*, 2010 U.S. Dist. LEXIS 19772, *13 (M.D. Tenn. Feb. 8, 2010) (citing *Carter v. Delaware Cnty. Bd. of Comm'rs*, 2009 U.S. Dist. LEXIS 16436, *22-23 (S.D. Ohio Mar. 3, 2009); *Moore v. Food Lion*, 2007 U.S. Dist. LEXIS 12312, *4 (M.D. Tenn. Feb. 21, 2007)). Rather, color discrimination "'arises when the particular hue of the plaintiff's skin is the cause of the discrimination,' such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Campbell*, 742, F. Supp. 2d at 951 (quoting *Bryant,* 288 F.3d at 132 n.5; *Moore*, 2007 U.S. Dist. LEXIS 12312, *23).

17

In the instant case, Plaintiff does not contend that he was discriminated against because of the hue of his skin. Therefore, Plaintiff fails to state a claim of color discrimination.

## C. Retaliation

Title VII prohibits discrimination against applicants or employees for attempting to protest or correct allegedly discriminatory conditions of employment." 42 U.S.C. 2000e-3(a); *McDonnell Douglas*, 411 U.S. at 796. Like claims of race discrimination, retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. 411 U.S. at 796; *see Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006). To establish an initial prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence that (1) he engaged in an activity protected by the Title VII; (2) this exercise of his protected rights was known to the defendant; (3) defendant thereafter took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Arban v. West Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). If a plaintiff presents a prima facie case, the court proceeds to consider the defendant's legitimate, non-discriminatory reason for the adverse employment action and the plaintiff's proof of pretext.

The parties agree that Defendant knew of Plaintiff's complaints against Mr. Adkins, and that the Defendant took adverse employment action against Plaintiff. For the reasons below, the court also finds that Plaintiff established the remaining two elements of a prima facie case of retaliation: Plaintiff's complaints about Mr. Adkins constitute activities protected by Title VII, and the temporal proximity of his complaints and his termination establishes a sufficient causal connection between the two events. However, pursuant to the analysis in Part VII.A.2-3 of this memorandum, Defendant has met its burden of rebutting Plaintiff's prima facie

case with a legitimate, non-discriminatory reason for its adverse employment action, and Plaintiff cannot establish that Defendant's reason is pretext for retaliation.

### 1.     Participation in an Activity Protected by Title VII

A "protected activity" is one directed against specific evils made unlawful by Title VII, such as race discrimination and race-based harassment. 42 U.S.C. § 2000e-3. A plaintiff's attempts to protest or correct conditions of employment must be (a) objectively reasonable and (b) subjectively based on a good faith belief that the opposed practices were unlawful. *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (citing EEOC Compliance Manual ¶ 8006). Plaintiff complained to his team leader about Mr. Adkins calling Plaintiff a redneck, racist, and junior, and to the Associate Relations department about Mr. Adkins speaking to him in the hallway and Mr. Adkins's physical threats after the "baboon" incident. The facts surrounding the latter two complaints undoubtedly implicate Title VII's prohibition on race discrimination and harassment. Evidence exists, therefore, to substantiate that Plaintiff engaged in a protected activity and that Defendant knew about Plaintiff's exercise of his rights.

### 2.     Causal Connection Between the Protected Activity and the Adverse Employment Action

To establish a "causal connection" between a plaintiff's exercise of a protected activity and the adverse employment action, a plaintiff must adduce sufficient evidence that the adverse action would not have been taken if the plaintiff had not engaged in the protected activity. *Nquyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). While the time period between the protected activity and the adverse action is a significant factor in this inquiry, *see Tittle v. Metro Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007), in most cases the causal

19

connection cannot be based solely on the temporal proximity or chronological order of the two events. *Ellis v. Buzzi Unicem USA*, 293 Fed. App'x 365, 375 (6th Cir. 2008); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006). However, the Sixth Circuit recently held that, "[w]here an adverse employment action occurs *very* close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Gaspers v. Ohio Dept. of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011) (citing *Mickey*, 516 F.3d at 525) (emphasis added). While there is no black letter rule regarding the degree of temporal proximity necessary to create a causal connection for a prima facie case, Sixth Circuit case law indicates that the line is at least two months.[2]

The Sixth Circuit considered a retaliation claim under similar facts in *Goller v. Ohio Department of Rehabilitation and Correction*, 285 Fed. App'x 250 (6th Cir. 2008). In *Goller*, the white plaintiff alleged that she was subject to retaliation in violation of Title VII when she was terminated shortly after complaining to her employer about allegedly racist remarks she received from an African-American coworker. *Id.* at 254. At least one of the plaintiff's meetings with her supervisor took place within two months of her termination. *Id.* at 253. The court found that the "strongest argument in favor of a causal connection is the temporal proximity between Goller's discussion with [her employer] and her termination." *Id.* at 257.

_____

[2] *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 600 (6th Cir. 2009) (two months is sufficient); *Miller v. City of Canton*, 319 Fed. App'x 411, 422 (6th Cir. 2009) (six months is insufficient); *Goller*, 285 Fed. App'd at 257 (two months is sufficient); *Vaughn v. Louisville Water Co.*, 302 Fed. App'x 337, 349-50 (6th Cir. 2008) (three months is sufficient); *Singfeld v. Akron Metro Hous. Auth.*, 389 F.3d 355, 363 (6th Cir. 2004) (three months is sufficient). *But see Arendale*, 519 F.3d at 606 (two months is insufficient).

20

Without considering any other facts suggesting a causal connection, the Sixth Circuit held that the fact that at least one of the plaintiff's meetings with her employer occurred within two months of her termination was "enough to generate an inference of retaliation." *Id.*

The facts of the instant case give rise to an even stronger inference of a causal connection than do the facts of *Goller*. Plaintiff's final complaint to the Associate Relations office took place on November 12, 2008, and he was suspended from work pending a decision by the Termination Review Board on November 24, 2008. Less than two weeks expired between Plaintiff's exercise of his protected activity and Defendant's taking an adverse employment action against Plaintiff. Therefore, pursuant to the Sixth Circuit's holdings in *Goller*, *Mickey*, and *Singfeld*, this temporal proximity alone is sufficient to satisfy the "causal connection" element, and Plaintiff has succeeded in setting forth a prima facie case of retaliation. *Goller*, 285 Fed. App'x at 257; *Mickey*, 516 F.3d at 525; *Singfeld*, 389 F.3d at 363.

### 3. Defendant's Legitimate Non-Discriminatory Reason and Plaintiff's Proof of Pretext

However, this court adopts its reasoning in Part VII.A.2-3, and finds that, even though Plaintiff put forth a prima facie case of retaliation, Defendant established a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff failed to show that these reasons were a pretext for retaliation. Therefore, Plaintiff's retaliation claims are dismissed.

### D. Hostile Work Environment

To establish a prima facie case of racial discrimination based on a hostile work environment, a plaintiff must show that (1) the plaintiff was a member of a protected class (or, for purposes of reverse race discrimination, "background characteristics" indicate discrimination against the majority); (2) the plaintiff was subjected to unwelcome race-based harassment; (3)

the harassment unreasonably interfered with the plaintiff's work performance by creating an environment that was intimidating, hostile, or offensive; and (4) the employer knew or should have known about the harassing conduct but failed to take corrective action. *Lindsey v. Whirlpool Corp.*, 295 Fed. App'x 758, 765 (6th Cir. 2008) (citing *Bailey v. U.S.F. Hollard, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008)). Like a retaliation claim, a claim of hostile work environment includes objective and subjective components: the conduct must be so severe or pervasive that it creates a hostile environment both to the reasonable person and the victim. *Randolph*, 453 F.3d at 733.

Plaintiff fails to satisfy all four elements, and his hostile work environment claim must be dismissed. Because Part VII.A.1 discussed Defendant's failure to satisfy the "background circumstances" test, the court proceeds with the remaining three elements.

### 1. Unwelcome Race-Based Harassment

When considering element (2), courts look to the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Title VII is not "a general civility code for the American workplace," *Burnett v. Tyco Corp.*, 203 F.3d 980, 982 (6th Cir. 2000), and "personal conflict does not equate with discriminatory animus," *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). The fact that a coworker "is mean, hard to get along with, overbearing, belligerent, or otherwise hostile and abusive, does not violate civil rights

statutes" unless the plaintiff can prove that the conduct of which he complains was based on the plaintiff's race. *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 603 (Tn. Ct. App. 2007).

In the instant case, Mr. Adkins did make several questionable statements to or in regard to Plaintiff, including calling Plaintiff a "junior," "redneck," and "racist." However, most courts acknowledge that, while these terms have racial undertones, *see Galdamez v. Potter*, 415 F.3d 1015, 1025 n.6 (9th Cir. 2005) (citing *Jackson v. Quanex Corp.*, 191 F.3d 647, 666 (6th Cir. 1999)), they are not overtly racist or discriminatory.[3] In regard to Mr. Adkins's threats to Plaintiff after the "baboon" incident, all of the statements appear to be race neutral: "I'm going to rip your head off" and "I'm going to break your fucking jaw." [Doc. 30, ¶ 55]; [Doc. 33, ¶¶ 194, 197.] There is no indication that Mr. Adkins made the verbal and attempted physical attacks to Plaintiff because Plaintiff was white; rather, it is evident that Mr. Adkins acted because he

---

[3] *Bishop v. Tyson Foods, Inc.*, 660 F. Supp. 2d 1004, 1020 (W.D. Ark. 2009) (finding "nothing inherently racial about these 'redneck' comments," and that such comments were not sufficient to support the plaintiff's claim of a racially hostile work environment); *Peterson v. Hantman*, 2006 U.S. Dist. LEXIS 33405, *31 (D.D.C. May 25, 2006) (denying a hostile work environment claim in part because the use of the term "redneck" "does not establish evidence of discriminatory intimidation, ridicule, or insult directed at [the plaintiff]" and did not "carr[y] any racially discriminatory connotations intended to humiliate or intimate [the plaintiff]"). *See also Defoe v. Spiva*, 625 F.2d 324, 335 n.6 (6th Cir. 2010) (finding "little if any history of the use of the word 'redneck' that would support its ban" in public schools) (citing *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 249-50, 256 (3d Cir. 2002). However, in some instances, such words, when combined with other repeated racist statements, can constitute evidence of racial harassment. This typically occurs during normal, as opposed to reverse, race discrimination cases, when a white boss or co-worker's reference to himself as a "redneck" constitutes harassment of or a threat to a black employee. *See, e.g., Paul v. Asbury Auto. Group, LLC*, 2009 U.S. Dist. LEXIS 4924, *12-13 (D. Or. Jan 23, 2009) (finding that a man's reference to himself as a "redneck," when combined with statements to the Plaintiff such as "You know you're my black slave," "half-back nigger," "half-black bastard," and "black ass faces," constituted repeated derogatory and humiliating statements); *Walker v. SBC Servs.*, 375 F. Supp. 2d 524, 542 (N.D. Tex. 2006) (denying employer's motion for summary judgment because the facts suggested a work environment in which black people "were belittled and demeaned regularly, and made to fear for their jobs by an environment where 'rednecks rule'").

thought Plaintiff had made the "baboon" picture. Finally, the fact that Mr. Adkins continued to speak occasionally to Plaintiff at work, despite having been instructed not to do so, does not constitute unwelcome racial harassment, since Mr. Adkins's greetings to the Plaintiff were not race-based or objectively harassing in nature, even if they were intended to provoke or anger Plaintiff.

Plaintiff's inability to identify the racial nature of his alleged harassment is most palpable in his response brief to Defendant's motion for summary judgment, in which he states: "The comments that [Mr. Adkins] was making towards [Plaintiff] had to do with race because Mr. Adkins was African American and [Plaintiff] was Caucasian." [Doc. 29, at 28.] This court will not permit Plaintiff to make such a tenuous inferential leap.

## 2. Unreasonable Interference with Plaintiff's Work Environment

The "unreasonable interference" element requires that a plaintiff present evidence that, "under the 'totality of the circumstances,' the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560, 562 (6th Cir. 1999) (quoting *Harris*, 510 U.S. at 21). To alter the terms or conditions of employment, the discriminatory conduct must be "extreme." *Faragher*, 524 U.S. 775, 788 (1998). This inquiry involves "both an objective component that asks whether a reasonable person would find the environment hostile and abusive, and a subjective component that asks whether the individual plaintiff subjectively viewed the environment as abusive." *Armstrong v. Whirlpool Corp.*, 363 Fed. App'x 317, 324 (6th Cir. 2010) (citing *Jackson*, 191 F.3d at 658). While courts have held that a single or a few exceptionally disturbing incidents may satisfy the "unreasonable interference" requirement,

courts generally hold that a few sporadic incidents, "even if they contain an element of physical invasion," are insufficiently severe or pervasive to create a hostile work environment. *Dotson v. Norfolk S. R.R. Co.*, 52 Fed. App'x 655, 658-59 (6th Cir. 2002); *Bowman*, 220 F.3d at 456.

Plaintiff argues that Mr. Adkins's racial harassment interfered with Plaintiff's work performance because Plaintiff had to "deal with [Mr. Adkins's] harassment, try to avoid dealing with [Mr. Adkins], watch any conversations he had with coworkers at work for fear any word might be considered racist, worry about his job and worry that if he spoke, [Mr. Adkins] would have organizations that would threaten [Defendant] with lawyers." [Doc. 29, at 29.] However, Plaintiff produced no evidence that Mr. Adkins's acts altered Plaintiff's productivity or daily life at work. *See Goller*, 285 Fed. App'x at 259 ("[The plaintiff] alleged only that she found [her boss's] comments 'offensive' and ' inappropriate' and did not produce any evidence that they interfered with her work performance."); *Fuelling v. New Vision Med. Labs., LLC*, 284 Fed. App'x 247, 259 (6th Cir. 2008) (finding that the plaintiff "produced no evidence showing that the comments [which included "white bitch," "white trash," and "cracker"] were more than merely offensive . . . nor did she explain or provide a single example of how the comments made her job more difficult"). Plaintiff failed to show that Mr. Adkins's verbal and attempted physical assaults on his person subjectively interfered with Plaintiff's work environment.

Even assuming for purposes of this motion that Plaintiff's work environment was subjectively affected, the court finds that Plaintiff also fails to satisfy the objective test for unreasonable interference. The conduct about which Plaintiff complains did not occur often, only occurred a few times in the Defendant's presence, and was not so "severe or  pervasive" as to adversely change the work environment for an objectively reasonable person. With regard to the

verbal slurs hurled at Plaintiff, the Sixth Circuit has held that the slurs in a reverse race discrimination case "are readily distinguishable from racial slurs that reference a history of racial discrimination," and are insufficient to create a hostile work environment to the objectively reasonable person. *Goller*, 285 Fed. App'x at 259; *see also Malozienc v. Pac. Rail Servs.*, 606 F. Supp. 2d 837, 862-63 (N.D. Ill. 2009) (holding that plaintiff's allegations failed to satisfy the objective standard for hostile work environment because no case law "support[s] the proposition that the terms 'hillbillies' or 'rednecks' are offensive to a reasonable person in Plaintiff's position"). Plaintiff has not presented any evidence that the few instances of race-based name-calling were so "severe or pervasive" as to be objectively unreasonable. And with regard to Mr. Adkins's physical threats following the "baboon" incident, Plaintiff gives no indication that they substantially altered his work environment, and while not dispositive, it is important to note that Plaintiff did not hear or see the initial threat. [Doc. 30, ¶ 56.] That single, isolated episode is not so "exceptionally disturbing" as to constitute an objectively unreasonable interference.

### 3.    Defendant's Failure to Take Corrective Action

The final element of a prima facie case for hostile work environment requires proof that an employer "tolerated or condoned the [alleged conduct] or . . . knew or should have known of the alleged conduct and failed to take prompt remedial action." *Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999).

All evidence in the instant case suggests that Defendant exercised reasonable care to prevent and correct promptly any racially harassing behavior by its employees. Giving employees "written notice of [anti-harassment policies] and how they are enforced constitutes an adequate general preventative measure." *Collette v. Stein-Mart, Inc.*, 126 Fed App'x 678, 685

(6th Cir. 2005). While Plaintiff notes that Defendant had no special policies with regard to reverse discrimination, the court notes that Defendant's policies are race-neutral and therefore constitute a sufficient preventative measure. Furthermore, Defendant's responses to Plaintiff's and Mr. Adkins's complaints were quick and adequate. Defendant initially tried to facilitate a peaceful coexistence between Plaintiff and Mr. Adkins. [Doc 30, ¶ 38, 46; [Doc. 33, ¶ 84, 101.] Defendant conducted investigations and interviews after Plaintiff called Mr. Adkins a "Toby" and made the statement about being on welfare [Doc. 30, ¶ 30-33], and after Mr. Adkins said "hey" to Plaintiff in the hallway and started "smearing" Plaintiff's name as a racist, *id.* ¶ 40-45. Following the "baboon" incident, Defendant took immediate action to remove Mr. Adkins from the plant, and investigated the incident and Plaintiff's subsequent Wal-Mart comment by talking with the Plaintiff, Mr. Adkins, and a number of other witnesses. *Id.* ¶ 61-64; [Doc. 33, ¶ 134.] Finally, Defendant timely disciplined both men for their conduct relating to the exchange of threats in early November. *Id.* ¶ 205, 220, 229, 237-38,

**E.      Race-Based Adverse Employment Action Taken to Avoid Disparate-Impact Liability**

This court denies Plaintiff's claim for "race-based adverse employment actions taken to avoid disparate-impact liability" for the same reasons contained in Part VII.A.

**F.      Tennessee Human Rights Act Claims**

Until *Gossett v. Tractor Supply Company, Inc.*, 320 S.W.3d 777 (Tenn. 2010), it was well settled that "the analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." In *Gossett*, however, the Tennessee Supreme Court held that, in Tennessee common law retaliation claims, the *McDonnell Douglas* burden-shifting framework "is inapplicable at the summary judgment stage because it is incompatible with Tennessee

summary judgment jurisprudence." *Id.* at 779. Specifically, under *Gossett*, "[e]vidence satisfying an employer's burden of production pursuant to the *McDonnell Douglas* framework does not necessarily demonstrate that there is no genuine issue of material fact." *Id.* at 782.

Primarily because the standard applied at the summary judgment stage is procedural rather than substantive, federal district courts in Tennessee have not afforded much weight to *Gossett*, and have held that *McDonnell Douglas* is still the appropriate standard for discrimination and retaliation claims arising under the Tennessee Human Rights Act. *Robinson v. CareFocus, Inc.*, 2011 U.S. Dist. LEXIS 73975, *24-25 n.4 (E.D. Tenn. July 8, 2011); *Boges*, 2011 U.S. Dist. LEXIS 45543, *17-20; *Moling v. O'Reilly Automotive*, 763 F. Supp. 2d 956, 973-75 (W.D. Tenn. 2011); *Philip v. Wrigley Manufacturing Co.*, 2010 U.S. Dist. LEXIS 112747, *31 n.5 (E.D. Tenn. Oct. 22, 2010).

This court considers Plaintiff's state law retaliation claim under the *McDonnell Douglas* burden-shifting framework, and accordingly for the reasons mentioned in the Title VII analysis, Plaintiff's THRA claims should be dismissed. This court also notes that *Gossett*'s application to the instant case would not affect the outcome of the race and color discrimination claims, for which *Gossett* retained the plaintiff's burden to come forward with prima facie evidence of discrimination. *Philip*, 2010 U.S. Dist. LEXIS 112747, *31 n.5.

## VIII.   Conclusion

Plaintiff failed to state a claim for color discrimination, failed to establish a prima facie case of race discrimination and hostile work environment, and, for all of his claims, failed to prove that Defendant's proffered legitimate, non-discriminatory reason is a pretext for

28

discrimination or retaliation. Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII and THRA claims is **GRANTED** and this case is **DISMISSED.**

**IT IS SO ORDERED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge